UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BESMELLAH JAMALI,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

CASE NO. 2:26-cv-03999-GJL

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Besmellah Jamali is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On October 16, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from immigration detention and injunctive relief. *Id.* Respondents to the Petition include Markwayne Mullin (Secretary of the U.S. Department of Homeland Security ("DHS")), DHS, Todd Blanche (Acting U.S. Attorney General), Executive Office for Immigration Review ("EOIR"), Andre Quinones (Acting Field Office Director for ICE's Seattle Field Office), and Bruce Scott (Warden of the NWIPC) (collectively "Respondents").[1] The Petition is fully briefed. Dkts. 1, 10, 13.

[1] The Parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 5.

Having considered the Parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition (Dkt. 1) **IN PART**, **ORDERS** Petitioner's immediate release, and **DENIES** his request for injunctive relief.

## I. FACTUAL BACKGROUND

Petitioner is a native and citizen of Afghanistan who has remained in immigration detention since he entered the United States on January 21, 2025. Dkt. 1 at 7. In a previous habeas action filed by Petitioner, United States Magistrate Judge Michelle L. Peterson found that Petitioner's prolonged mandatory detention without individualized process violated due process, granted habeas relief, and ordered that Petitioner receive an individualized bond hearing. *Jamali v. Wamsley*, No. 2:26-cv-02333-MLP, Dkt. 18 (W.D. Wash. Aug. 21, 2026); *see also id.*, Dkt. 18 (consenting to proceed before a United States Magistrate Judge). The habeas order required that the hearing be held pursuant to the requirements outlined in *Singh v. Holder*, 638 F. 3d 1196 (9th Cir. 2011), and expressly stated that "[n]othing in this Order prevents Petitioner from requesting a continuance of the bond hearing." *Id.*, Dkt. 18 at 11.

Pursuant to that relief, Petitioner received a bond hearing before Immigration Judge ("IJ") Tammy Fitting on August 31, 2026. Dkt. 12-2. The parties disagree as to whether Petitioner submitted evidence concerning his suitability for release in the appropriate form or sufficiently in advance of the hearing to permit review by the IJ. Dkt. 1 at 9; Dkt. 10 at 7–8; Dkt. 13 at 13–14. Nevertheless, it is undisputed that the IJ did not review Petitioner's evidence on the electronic record ahead of the hearing, that the IJ declined to accept Petitioner's evidence in paper form at the hearing, and that she denied Petitioner's request to continue the hearing so that the evidence could be reviewed on the electronic record. *See* Dkt. 12-2. The IJ only reviewed the government's evidentiary submissions, which included a DHS I-213 Form and record of an oral

decision by IJ Shane E. Johnson finding that Petitioner lacked credibility concerning his requests for asylum and withholding of removal. Dkt. 1-4.

A transcript of the immigration bond proceedings was submitted for the Court's review. Dkt. 12-2. At the bond hearing, IJ Fitting admitted the government's evidence into the record, declined to accept Petitioner's evidence in paper form or grant a continuance to permit electronic review, and confirmed that the habeas order placed the burden on the Government to demonstrate that Petitioner posed a risk of flight or dangerousness by clear and convincing evidence. *Id.* at 3–5. The IJ then heard argument from both sides. *Id.* at 5–6.

The Government argued that Petitioner was an "extreme flight risk" based on his order of removal, calling particular attention to IJ Johnson's credibility determination concerning Petitioner's claims for relief from removal. *Id.* at 5. IJ Fitting then confirmed that Petitioner appealed his removal order, and that the Government had no concerns regarding dangerousness. *Id.* Petitioner's counsel argued that the Government had not met its burden, noting first that Petitioner has a potential avenue for relief from removal through his pending appeal. *Id.* at 6. Petitioner's counsel further argued that the procedural posture of Petitioner's removal proceedings alone was insufficient to establish flight risk. *Id.* Petitioner's counsel then stated that Petitioner was Muslim and that his inability to practice his religion while detained provided a significant incentive for release. *Id.* Counsel requested that Petitioner be released on bond to mitigate any concerns regarding flight risk. *Id.* The IJ then inquired about Petitioner's manner of entry into the United States, which Petitioner's counsel could not confirm. *Id.*

Following these exchanges, the IJ denied bond, stating:

> All right, so we do not have any evidence that has been properly uploaded. Let me see what the [habeas] order says as to the time frame. So within 14 days of the [habeas] order, that was August 21. Okay, now we want to make sure we're complying with the time frame. All right, well, the Court does not [*sic.*] find the Respondent is a flight risk. It appears he has—so he entered in 2025. So the

> Respondent has limited time and ties. And he has an order of removal, all applications denied. And I find the Respondent has little to no incentive to appear for any future hearings or an order of removal in return. So I find the Respondent is a flight risk and that the Government has met its burden for flight risk, but not danger.

*Id.* at 7. After the hearing, IJ Fitting also prepared a written memorandum, which outlined the applicable law, the parties' arguments and evidence presented at the hearing, and her decision to deny a continuance "to comply with the timeframe" of the habeas order. Dkt. 12-3 at 2–3. The memorandum also expounded upon IJ Fitting's oral bond decision:

> After consideration of all the evidence presented the court finds [Petitioner] is not a danger. The [Petitioner] has limited time and ties in the United States. The court finds that it is significant the prior court found him incredible and could not rely on his testimony. All applications for protection were denied. He has a removal order. The court finds that he has little to no incentive to appear for future hearings or orders. The court finds that DHS met its burden of proof by clear and convincing evidence[.]

*Id.* at 3.

## II. PROCEDURAL BACKGROUND

Petitioner initiated this action on October 19, 2026, by filing a federal habeas Petition and supporting materials. Dkt. 1; Dkts. 1-1–1-4, 2. Respondents filed a Return and supporting materials on November 3, 2026. Dkt. 10; Dkt. 11; Dkts. 12, 12-1–12-3. Petitioner filed a timely Traverse. Dkt. 13. Thus, this matter is now fully briefed and ready for consideration by the Court.

## III. HABEAS STANDARD

Federal courts have the authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from

illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## IV. DISCUSSION

Petitioner seeks immediate release from detention, arguing first that the IJ's bond denial decision and his bond proceedings violated his procedural due process rights. Dkt. 1 at 14–16. Petitioner also contends that the bond proceedings and his continued detention violate his substantive due process rights. *Id.* at 16–17. Finally, Petitioner also seeks injunctive relief concerning any future re-detention decision he may face and what conditions of release that may be imposed. *Id.* at 17–18.

In their Return, Respondents argue that Petitioner should be required to exhaust available administrative remedies before the Board of Immigration Appeals ("BIA") and, in any case, that the IJ did not abuse her discretion and that the immigration bond proceedings complied with due process. Dkt. 10 at 3–8. Respondents further contend that Petitioner is not entitled to injunctive relief. *Id.* at 8–9.[2]

[2] Curiously, Respondents also argue that Petitioner is lawfully detained under 8 U.S.C. § 1226(a) and that his bond proceedings complied with the statutory and regulatory requirements for discretionary detention decisions made under that provision. Dkt. 10 at 3. But Petitioner's bond proceedings were held pursuant to the requirements outlined in *Singh v. Holder*, 638 F. 3d 1196 (9th Cir. 2011), to remedy his prolonged *mandatory* detention under 8 U.S.C. § 1225(b)(2). *Jamali*, 2:26-cv-02333, Dkt. 18 at 11; *see also id.*, Dkt. 18 at 4 (noting that Respondents' "primary position" in Petitioner's prior habeas proceedings was that "Petitioner is subject to mandatory detention under § 1225(b)(2) as an applicant for admission because he was detained within fourteen days of entry without inspection and within 100 air miles of an international land border"). Bond hearings held under § 1226(a) differ from those held pursuant to the requirements outlined in *Singh* in several ways, including the applicable burden of proof and which party bears it. Despite the confusing position taken in the Return, however, it is clear from the record of Petitioner's immigration bond proceedings that both the government and the IJ were aware that the requirements outlined in *Singh* applied. *See* Dkt. 12-2; 12-3.

In his Traverse, Petitioner contends that administrative exhaustion is not required and should be waived. Dkt. 13 at 6–10.

The Court agrees with Petitioner that exhaustion is properly waived, that the IJ's bond determination violated Petitioner's procedural due process rights, and that he is entitled to immediate release.[3] The Court does not find, however, that Petitioner is entitled to the injunctive relief requested in the Petition. The Court also declines to address whether Petitioner's substantive due process claim provides a further basis for habeas relief.

First, even if exhaustion were required, waiver of that requirement is appropriate given the frequently delayed remedies available through the BIA and the comparatively swift relief available via habeas corpus proceedings:

> If Petitioner is correct that [his] detention is unlawful and h[is]immediate release is required, even a successful BIA appeal process is no adequate substitute for the swifter redress available through the habeas writ. A petition for writ of habeas corpus is "entitled by statute to special, preferential consideration to insure expeditious hearing and determination." *Van Buskirk v. Wilkinson*, 216 F.2d 735, 737–38 (9th Cir. 1954). This is for good reason: the Constitution cannot abide the prolonged confinement of a person who by law should be at liberty. Therefore, "[t]he application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from [her] within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000).

*Roberts v. Scott*, No. 2:26-CV-01333-TL, 2026 WL 2071146, at *4 (W.D. Wash. July 17, 2026) (last alteration in original). Thus, the Court concludes that the circumstances presented here warrant waiver of any exhaustion requirement.

Next, the Court finds that Petitioner has satisfied his burden of demonstrating by a preponderance of the evidence that reviewable legal or constitutional errors pervaded his

[3] Notwithstanding the jurisdictional limitations in 8 U.S.C. § 1226(e), the Court also finds it has jurisdiction over Petitioner's claims. *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022); *Kharis v. Sessions*, Case No. 18-cv-04800-JST, 2018 WL 5809432, at *4 (N.D. Cal. Nov. 6, 2018) ("[A] district court has jurisdiction to review an IJ's discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional.") (collecting cases).

immigration bond proceedings and warrant the grant of habeas relief. More specifically, the IJ's stated reasons for denying bond do not bear a rational relationship to the likelihood Petitioner will abscond or appear and the resulting bond denial decision violates due process. *See Soto Gimenez v. Hernandez,* No. 2:26-CV-00966-GJL, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026) ("Bond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case. Where those minimum requirements are not met, a resulting bond denial decision violates due process.").

The first three circumstances cited by the IJ—Petitioner's limited time, ties,[4] and avenues for relief from removal—are common among noncitizens subject to prolonged mandatory detention and, standing alone, are not a permissible or sufficient basis for a flight risk finding. *See, e.g.*, *Sakwe v. Mullin*, No. 26-CV-02159-BAS-MMP, 2026 WL 2568438, at *2 (S.D. Cal. Aug. 14, 2026) (if a mandatory detainee's limited ties, time, and avenues for relief from removal alone "were sufficient to show clear and convincing evidence of risk of flight, there would be no need to hold a bond hearing following a finding of prolonged detention"); *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1081 (W.D. Wash. 2026) (limited avenues for relief from removal, which is common among noncitizens facing the prospect of removal, does not provide rational basis for flight risk finding); *see also Layata Hernandez v. Hernandez*, No. 2:26-CV-01574-GJL, 2026 WL 1723680, at *6 (W.D. Wash. June 15, 2026) (noting that, even permissible factors considered by IJs, "should not be viewed so broadly or given such undue weight as to risk either

[4] The Court also notes that there was no evidence in the record before the IJ demonstrating that Petitioner lacked ties in the United States, and the burden was on the Government to demonstrate flight risk by clear and convincing evidence. *See* Dkt. 12-2. First, the Court did not review Petitioner's tendered evidence for whatever reason. Worse yet, and notwithstanding the Government burden, the IJ then apparently relied upon this lack of production to support her finding. At a minimum, it appears the IJ impermissibly shifted the burden onto Petitioner.

denying release or 'requiring a bond of almost every [noncitizen] who is held in deportation proceedings'") (quoting *Matter of Patel*, 15 I. & N. Dec. 666, 667 (BIA 1976)).

Beyond those three insufficient considerations, IJ Fitting found it "significant" that Petitioner was found to be not credible in his asylum and withholding of removal proceedings before a different IJ. Dkt. 12-3 at 3; *see* Dkt. 1-4. The Court does not disturb that credibility determination. Nevertheless, IJ Fitting made no separate credibility determination and offered no meaningful explanation for how Petitioner's credibility concerning his eligibility for relief from removal bore upon his likelihood of appearing for future immigration proceedings. Furthermore, IJ Fitting heard no testimony from Petitioner concerning his suitability for release that would make his general credibility as a witness relevant to her flight-risk finding. Therefore, the credibility issue appears to reflect, at most, an additional concern regarding Petitioner's limited prospects for relief from removal, which is not sufficient to sustain a rational flight risk finding. *Sakwe*, 2026 WL 2568438, at *2; *Soriano*, 830 F. Supp. 3d at 1081.

In sum, a reasonable and impartial decision-maker presented with the facts and evidence of Petitioner's case would not conclude denial of bond was warranted. The Court therefore concludes that the IJ abused her discretion in denying bond and that Petitioner's continued detention pursuant to that determination violates due process.

With respect to the remedy, the Court finds that immediate release rather than a conditional writ requiring that another bond hearing be provided is the appropriate remedy here. Indeed, Respondents have already been afforded an opportunity to cure legal deficiencies underlying Petitioner's detention and that they failed to do so. *See Jamali*, 2:26-cv-02333-MLP. Dkt. 18 (ordering bond hearing to cure legal defects underlying Petitioner's detention). And "[t]he consequence when the State fails to replace an invalid judgment with a valid one is *always* release." *Harvest v. Castro*, 531 F.3d 737, 742 (9th Cir. 2008) (emphasis added).

Finally, the Court denies Petitioner's requests to enjoin Respondent's detention authority. In particular, Petitioner requests that the Court impose specific procedures that must be met before Respondents may lawfully re-detain Petitioner and requests that the Court constrain Respondents' authority to impose certain release conditions. Dkt. 1 at 17–18. Such broad requests are not supported by the record in this case. While the Court generally concurs with Petitioner that Respondents must comport with due process when exercising their detention authority, the Court declines to conclusively resolve what individualized process may be due to Petitioner in all circumstances preceding a future re-detention, nor will it weigh in on what conditions of release Respondents may permissibly impose.

## V. CONCLUSION

Accordingly, the Court **ORDERS** as follows:

(1) Petitioner's habeas Petition (Dkt. 1) is **GRANTED IN PART;**

(2) Respondents **SHALL release** Petitioner Besmellah Jamali from custody **IMMEDIATELY** either on his own recognizance or under conditions of supervision reasonably necessary to ensure his appearance; and

(3) Respondents **SHALL** file a declaration within **24 HOURS** of the issuance of this Order, confirming that Petitioner has been released from custody and providing the date and time of release.

Finally, the Court will entertain any post-judgment motion for attorney's fees, as requested in the Petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 17th day of November, 2026.

Grady J. Leupold
United States Magistrate Judge